**IN THE COURT OF APPEALS OF IOWA**

No. 18-1134
Filed September 12, 2018

**IN THE INTEREST OF K.N., L.N., and V.N.,**
**Minor Children,**

**F.N.R., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


A father appeals the termination of his parental rights.  **AFFIRMED.**


Gina E. Verdoorn of Carr Law Firm, PLC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem

for minor children.


Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

A father appeals the termination of his parental rights to his three children. He argues the statutory grounds for termination were not met and termination was not in the children's best interests. We agree with the juvenile court and affirm.

L.N., K.N., and V.N. were born in February 2014, October 2012, and February 2011 respectively.[1] They came to the attention of the Iowa Department of Human Services (DHS) in October 2016 upon reports of improper supervision. After DHS made a subsequent visit to the home on March 3, 2017, the children were removed when they were again found improperly supervised. Since May 15, the three children plus their half-sibling have lived in the same foster home. The children have done well in foster care, and the foster parents are willing to adopt the children.

The father has been in prison in Iowa since February 2016—before DHS involvement—for being a felon in possession of a firearm. His criminal history includes convictions for assault and narcotics possession. He has a history of marijuana and methamphetamine use as well as domestic violence against the mother, including an arrest in February 2012 for domestic abuse assault.[2] He has participated in some services through the prison, including completing a program on anger management and batterer's education. At the time of the termination

---

[1] In December 2016, during these proceedings, the mother gave birth to another child, G.Y. The father at issue here is not the father of G.Y., and the parental rights to G.Y. are not part of this appeal.

[2] V.N. was adjudicated a child in need of assistance in 2012 after a founded assessment against the father for his drug use and assaultive behavior against the mother in the presence of the child.

hearing, he was incarcerated at the Iowa State Penitentiary and his tentative discharge date was April 23, 2020.

On April 12, 2017, the children were adjudicated children in need of assistance (CINA). On May 18, 2018, the termination hearing was held. On June 15, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (f) (2018).[3]

We review termination proceedings de novo, giving weight to but not being bound by the district court's factual findings. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "There must be clear and convincing evidence of the grounds for termination of parental rights." *Id.* Our primary consideration is the best interests of the children. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

First, the father argues the statutory grounds for termination were not met. "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Under Iowa Code section 232.116(1)(f), the court may terminate parental rights if it finds all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

---

[3] In the same order, the juvenile court also terminated the parental rights of the mother and G.Y.'s father. The mother is not a party to this appeal. We address the appeal of G.Y.'s father in another decision filed today. *See In re G.Y.*, No. 18-1095 (Iowa Ct. App. Sept. 12, 2018).

It is undisputed all three children are four years of age or older, were adjudicated CINA, and had been removed from the physical custody of their parents for at least twelve of the previous eighteen months. Iowa Code § 232.116(1)(f)(1)–(3). The father disputes whether the children could be returned to his care at the time of the termination hearing. *Id.* § 232.116(1)(f)(4); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (indicating the statutory language "at the present time" refers to the termination hearing). He is incarcerated and is tentatively scheduled for discharge almost two years after the termination hearing. His incarceration prevents the children from being returned to him at the present time. Therefore, the statutory grounds for termination were met. *See* Iowa Code § 232.116(1)(f). Further, his request for an additional six months was appropriately denied as his incarceration would still remain an obstacle to having the children in his care. *See id.* § 232.104(2)(b) (allowing the court to authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

Second, the father argues termination is not in the children's best interests. In making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* § 232.116(2). As mentioned above, the father is incarcerated and unable to care for the children for almost an additional two years. He has not seen the children for two and one-half years, and his last phone call with them was in October 2017. The children's therapist has recommended the

children have no phone contact with the father due to behavior issues after the calls.

The father, while attempting to blame DHS for a poor bond with his children, has made little effort to show he would even be receptive to visitation while incarcerated. The prison has a visiting area for children, but he has not taken the necessary steps for the children to visit him in prison by filling out the appropriate prison forms, nor has he talked to his prison counselor about visitation. He testified he made several phone calls in an attempt to contact DHS and the children's therapist, but he claimed he was not able to speak to anyone or leave messages. The DHS worker testified she received numerous calls from the prison—ten to fifteen calls per day at times; however, she was often not available to answer the calls, and when she did answer the calls no one was on the other end. He acknowledged receiving mail from DHS in prison; however, the DHS worker testified some of his mail had been returned to her, and he never attempted to contact DHS by mail. He has not provided releases for DHS to obtain information about him from the prison or a relative worksheet for DHS to provide services to family members. While telephone communication between the prison and DHS was clearly a problem, the father took no alternative measure to correspond with DHS in writing after receiving case information.

The father's history of domestic violence has traumatized the children, and the children's trauma has only begun to subside after ending direct contact with him and the mother.[4] He has engaged in some services to address his issues

_____

[4] The father refers to his bond with the children. To the extent he argues the parent–child bond precludes termination, this argument is more appropriately made under the

6

through prison, but he has not shown he has overcome his violent and criminal history so as to avoid exposing the children to more violence. He has had little involvement with DHS throughout this proceeding and has not taken full advantage of his opportunities to communicate with DHS. He also has not cooperated with prison officials to facilitate visitation efforts. The children have done well in foster care, and their foster family is willing to adopt them. Therefore, we find termination is in the children's best interests.

**AFFIRMED.**

---

permissive factors of Iowa Code section 232.116(3)(c) (stating the "court need not terminate the relationship between the parent and the child" if it finds "that the termination would be detrimental to the child at the time due to the closeness of the parent–child relationship"). The record contains little evidence the children are positively bonded with the father; instead, the father's actions have traumatized the children. Conversely, the children have done well in the foster home. Therefore, the parent–child bond does not preclude termination.